## *Inhabt's of* CORINNA *vs. Inhabt's of* EXETER.

In a question respecting the settlement of a pauper, the statements of an overseer of the poor of the town, he being a competent witness, made at the time of leaving a notice but having no relation to the notice, cannot be given in evidence.

Where it was contended, that the supplies were not furnished to a pauper in good faith, but to prevent his gaining a settlement; it is competent for the overseer, furnishing the supplies, to testify that they were furnished in good faith, and upon his judgment of what duty required.

It is not necessary, under the statute of 1821, *ch.* 122, that a person in distress should apply for relief as a pauper; it is sufficient to prevent his gaining a settlement by five years residence, if the person was in distress and in need of immediate relief, and the supplies were furnished and finally received.

To bring the case within the exception and avoid the settlement, it is not necessary that *notice* of having furnished supplies to the pauper should be given to the town where the settlement is.

THE action was on the statute for supplies furnished *Lewis Williams* and family, alleged to have been paupers and to have had their legal settlement in *Exeter.*

The settlement of *Williams* was admitted to have been in *Exeter*, on and before *June*, 1826, at which time he removed into

*Corinna,* and continued to reside in that town until the commencement · of the suit. , To show that *Williams* gained no settlement by his residence in *Corinna* for a term of time exceeding five years, under the statute, they introduced evidence to shew, that at two different times, within the five years, *Williams* and his family had received from the town supplies as a pauper. One instance was where a physician who had attended on the family for two years previous to that time, had charged $48,28 for his services, and had been paid all but about two dollars, was called on by one of *Williams'* minor sons to attend another sick son, and refused to go on the credit of *Williams,* and did not go until after he had given notice to one of the selectmen, and had been authorized by him to go on the credit of the town. He went and visited the child for which he charged seventy-five cents, and was paid by the town. The other instance of the furnishing of supplies was in *Feb.* 1830. A *Mr. Emery* testified, that he was on that day at *Williams'* house ; that *Mrs. Williams* was in bed ; that there was no wood, but what was on the fire, where there was only one brand and a few coals ; that *Mrs. Williams* said she had no food but a few frozen potatoes ; that her husband was gone, and that it was uncertain when he would return ; that they got some wood for her, made a fire, and at her request went to *Mr. Winchester's,* one of the overseers of the poor, to solicit aid. *Mr. Winchester* testified, that on the day referred to, he went, as requested, to *Williams'* house ; that *Mrs. W.* was by the fire, told him that her husband had returned with meal, and had just left to go for some fish, molasses, and tea, and would soon return, and wished him to remain until then ; that having been informed of their destitute condition, he went there, and took with him four pounds of pork, some flour and some bread; but finding they had received some meal, he carried home the flour and left the pork, for which he charged the town of *Corinna* fifty cents, and had received his pay. He further testified, that *Mrs. W.* informed him, that her husband had directed her not to receive any assistance ; that he did not inform her that he left the pork, as supplies ; that he thought she might possibly have received the impression from the conversation between them, that the pork was a present, as she remarked, that she hoped she should be

able to reward him for it ; that he did not communicate to *Williams* or his family, that this pork was furnished as supplies ; and that during the six or seven years, that he had been selectman he had not known that *Williams*, though very poor, had applied to the selectmen, personally, for assistance.   No notice was given to the town of *Exeter*, that the plaintiffs had furnished the pork to *Williams*, or had paid the bill of the physician.

The plaintiffs proposed to prove by *Winchester*, what his intentions were in leaving the pork ; to which the counsel of the defendants objected, on the ground that the jury should be left to gather his intention from his acts.   This objection was overruled by *Weston C. J.*, who presided at the trial, it having been insisted on the part of *Exeter*, that this supply was not furnished in good faith, and he was permitted to testify, and did testify, that his intentions in leaving the pork were to relieve the distress of the family, and not to prevent his gaining a settlement.   There was much other testimony bearing upon the question, whether the supplies were or were not furnished in good faith.   *Williams* testified, that he did not know, that this pork was furnished as supplies, until *April*, 1833, and that when he was informed by his wife of her sending to *Winchester*, that he directed her to receive nothing, as a pauper.

The defendants then offered to prove, that *Cushman Bassett*, one of the overseers of *Corinna*, at the time he left the notice with the overseers of *Exeter*, in 1833, stated that *Williams* had not a settlement in *Corinna*, for that they had supplied him to prevent his gaining a residence in that town, and that they meant to help the family, so that they should not gain a settlement ; which proof was rejected by the Chief Justice.   The counsel of the defendants insisted, that the supplies furnished in 1830, did not prevent *Williams* from gaining a settlement, because no notice was given to *Exeter*, of those supplies being so furnished ; because furnished without his request, knowledge or consent, and against his will ; that though supplies might be requested and offered, yet if not received as supplies by the pauper, they did not prevent his gaining a settlement, and that the jury might be permitted to pass upon the fact ; and that the facts proved by the

plaintiffs did not show, that *Williams* had not gained a settlement in *Corinna* by lapse of time.

The Chief Justice instructed the jury, that if the pork furnished by the overseer, *Winchester*, was given as a present, or not in good faith, or with a view merely to prevent *Williams* and his family from gaining a settlement in *Corinna*, it could not be regarded as a supply furnished him as a pauper, within the meaning of the statute. But that if the family were in distress, standing in need of relief from the town, and the overseer of the poor in good faith, and in the honest discharge of his official duty, furnished relief, and it was received and consumed by the family, the case was brought within the exception in the statute relied upon by the counsel for the plaintiffs. And that if a family, in a distressed and starving condition, did even decline to receive relief as paupers, it was nevertheless the duty of overseers to furnish it, and if actually received and consumed, the continuity of residence necessary to gain a settlement was broken; and that to produce this effect, it was not necessary to give notice to the town liable. The verdict was for the plaintiffs, and was to be set aside, if the testimony rejected was admissible, or if that objected to, ought to have been received, or if the jury were improperly instructed.

*J. Appleton*, for the defendants.

The rejection of the testimony offered to prove the declarations of *Bassett*, one of the overseers of *Corinna*, when he left the notice with *Exeter*, was erroneous.

Every inhabitant of the town is a party to the suit, and his admissions are evidence. *Adams* v. *Wiscassett Bank*, 1 *Greenl.* 361; 11 *East*, 578; 1 *Maule & S.* 636. He was an officer of the town, doing the business of the town, and the statements were made in relation to this business, and therefore may be given in evidence.

The instruction requested by the counsel for the defendants, at the trial, ought to have been given.

The *statute*, *ch.* 122, provides, that if the pauper shall reside in any one town for the space of five years together, " and shall not during that term receive directly or indirectly any support or supplies from some town, as a pauper, shall be deemed to have a

settlement in the town, where he then dwells and has his home." It is the *reception by the pauper*, and not the *furnishing by the town* of support, which interrupts the settlement. The word *received* implies knowledge and assent on the part of the person receiving. 11 *Pick.* 540, *opinion to the Senate; Green* v. *Buckfield*, 3 *Greenl.* 136; *Bloomfield* v. *Canaan, ibid*, 172; *East Sudbury* v. *Sudbury*, 12 *Pick.* 1.

The supplies, in order to constitute a man a pauper, must be furnished, and must be *received as a pauper.* This is a case where the supplies were given with one intent, and received, if received they were, with another. *Williams* never asked support, as a pauper, but expressly refused so to do, and did not receive the article as a pauper, or under the expectation, that he should thereby become one. Such is the language of the statute. If not, then it makes no difference, whether the supplies were received, as a pauper, or *not* as a pauper. A gift has been classed, as one description of contracts, and certainly it requires the assent of both parties to make a contract. Becoming a pauper takes away the most important rights, such as voting and having the control of his own family. *Dixmont* v. *Biddeford*, 3 *Greenl.* 205; *Pothier on Con.* 11; *Hazard* v. *N. E. M. Ins. Co.* 1 *Sumner*, 218; *Allen* v. *McKean*, 1 *Sumner*, 307; 4 *Day's R.* 395; 7 *Conn. Rep.* 503; 11 *Pick.* 542; 4 *Gill & Johns.* 1.

This is not a case contemplated by the statute; not a case of *falling into distress, and standing in need of immediate relief.* When the four pounds of pork were left, the family denied that they were in distress, and not only notified the overseer, that the head of the family had directed them not to receive anything from the town, but *did actually refuse to receive it*, while so offered. If they were in such distress, as to stand in need of immediate relief, leaving four pounds of pork, but carrying home the bread and meal, would not have relieved it.

*Rogers*, for the plaintiffs.

This is a mere question of liability; on which town devolves the duty of supporting these paupers. The case shews, that the pauper once had his settlement in *Exeter*, and there it must remain until a new one is acquired. If a person falls into distress,

and stands in need of relief, and this is known to the overseers of the poor of the town, it is their imperious duty to furnish it. Neither law, nor humanity, requires them to wait until the sufferers come and acknowledge themselves to be paupers. *Paris v. Hiram*, 12 *Mass. R.* 267. If the case is found, and the relief is furnished, it necessarily makes the man a pauper; if it be not, his acknowledging that he is a pauper, does not make him one. The same state of things and the same acts, which will make a man a pauper with his assent, will make him so without it.

It has been said, that there was error on the part of the Judge in not giving the instructions requested. The instructions sought may be divided into three propositions.

1. Because furnished against his will. This has already been disposed of.

2. Because no notice was given to *Exeter* of the furnishing of the supplies. This is only necessary, when there is an action to be brought. If this be law, then the pauper may be supported by the town during the whole five years, and yet gain a settlement there, because the town where he happened to reside could not find the town where the settlement was.

3. Because not received by the pauper, as such; acknowledging himself to be a pauper. If the request or consent of the pauper was necessary, the statute ought to have said so. The pauper might be insane, or unable to speak, or wilfully perverse and willing to see his family starve; but will this excuse the overseers in seeing them perish without assistance?

The instructions given were correct. The finding of the paupers in distress; the furnishing them the supplies in good faith; and the receiving and consuming the articles left as supplies; were held to constitute the man a pauper. This is the only fair construction, that can be given to the statute.

The declarations of *Bassett* were clearly inadmissible. By the *stat.* of 1821, *ch.* 87, he was made a witness for either party, and therefore must be called himself. *Angel & A. on Cor.* 389, *sec.* 8.

The action was continued for advisement, and the opinion of the Court drawn up, and delivered at a subsequent term, by

WESTON C. J. — *Lewis Williams,* for the support of whom and family this action is brought, it is agreed had his settlement in the town of *Exeter.* That town attempts to escape the charge, by showing that he gained a new settlement in *Corinna.* He resided and had his home in that town for more than five years together, from and after *June,* 1826. And the question is, whether within the five years he received directly or indirectly any supplies or support as a pauper from the town of *Corinna.* With a view to shew that the support, upon which they relied, was furnished collusively, and in fraud of the law, the defendants offered to prove certain declarations, having this tendency, made by *Cushman Basset,* an overseer of the poor of *Corinna,* when he left a notice with the overseers of *Exeter.* Proof of these declarations was rejected.

It is insisted however, that this proof was admissible, either because *Bassett* is a party to the suit, or as a part of the *res gesta.* He was a citizen of *Corinna,* who sue in their corporate capacity, and cases have been cited to show, that as such he may be regarded as a party. His property is liable to be taken by any creditor of the town ; but a citizen or inhabitant of a town has never been, in our practice, so far regarded as a party to their suits, as to admit his declarations as such in evidence. The interests of a town might be jeopardized, if they were liable to be affected by mere declarations of any one of their citizens. The purposes of justice do not require it ; for they are by statute expressly made competent witnesses.

In *The King* v. *The Inhabitants of Hardwick,* 11 *East,* 578, proof of the declarations of an inhabitant, as a party, was received, because he could not be compelled to be a witness. All the Judges place the admission upon that ground. *LeBlanc J.* expresses his regret, that so important a point of evidence should come up in a settlement case, where their decision could not be revised. In our courts, an inhabitant of a town is compelled to be a witness ; and although he is a party so far, as that his property may be seised on execution against the town, we are of opinion that his declarations cannot be received in evidence. *Basset* was the bearer of a written notice to the overseers of *Exeter.* When leaving it, he made certain statements of what *Corinna* had done

in reference to *Williams*, of its effect and of their motives. The business done, the *res gesta*, was the delivery of the notice. The declarations were in no proper sense a part of it. They formed no part of any business, he was negotiating in behalf of the town. If he knew any facts, favorable to the interest of *Exeter*, they might have called him as a witness.

*Winchester*, another overseer was called, and he was competent to testify to all facts, bearing upon the issue. A question had been raised, of importance in the cause, whether the supplies were furnished in good faith. He best knew, for he was the overseer applied to, and the supply was furnished upon his judgment of what duty required, and by his hand. It was then proper for him to testify, whether he acted in good faith, and in the discharge of what he believed to be his official duty.

The jury have passed upon the testimony, upon which the defendants relied, They have negatived the assumption, that the supply was left as a present, or not in good faith, or with a view to prevent *Williams* from gaining a settlement in *Corinna*. And they have found that his family was in distress, standing in need of relief from the town, and that the supply was furnished in good faith, and actually received and consumed in the family. The statute no where makes it necessary, that the suffering party should apply for relief. The duty of the overseers arises, when distress exists and relief is necessary. If the husband and father, through false pride, or a reckless disregard to the wants of his family, or from any other motive, should protest against the proffered supply, and refuse to receive it as a pauper, it is still the duty of the overseers to relieve his and their distress, and if the supply is finally received, we doubt not it comes within the exception of the statute. This was the view of the law taken by the presiding Judge in his instructions to the jury; and in our judgment it was correct.

No motion is filed to set aside the verdict, as against the weight of evidence. It was the province of the jury to determine the facts. If *Corinna* did not give notice to *Exeter*, they could not claim a reimbursement. The supply was too trifling, to require such a course of proceeding. But their omission to do so would not affect the fact, which brings the case within the exception of

the statute, and which is not made to depend upon the giving of such notice. Nor is it of any importance, what may have been the amount or value of the supply. A settlement is not gained by a residence of five years, if the party, within that time, "receive directly or indirectly any supplies or support as a pauper."

*Judgment on the verdict.*