#### COUNTY OF ADDISON,

#### January Term, 1849.

[Continued from Vol. 21, page 171.]

PRESENT,

Hon. ISAAC F. REDFIELD,
Hon. DANIEL KELLOGG,
Hon. HILAND HALL, } Assistant Judges.
Hon. LUKE P. POLAND,

---

### Enoch Paine v. Town of Leicester.

Upon a writ of *certiorari*, in road cases, as upon a writ of error, in cases where that writ lies, the supreme court will revise the proceedings of the inferior tribunal in matters of law; but their decision upon questions of fact, involving the exercise of discretion, can only be revised by placing upon their proceedings the facts, which show that they could not, in point of law, render such judgment as they did.

And the supreme court, in such cases, will presume as much, and perhaps more, in favor of the regularity of the proceedings of the inferior tribunal, as in actions at common law.

Paine *v.* Leicester.

The questions, how far the public good, or the necessity of individuals, may require a road, or how many persons live upon the road, or whether the road is laid to accommodate the land of one person only, are all matters of fact, to be decided exclusively by the commissioners and the county court.

Upon application for a writ of *certiorari,* the court will exercise a discretion in denying the remedy, even where it is obvious, that some formal error has intervened; and in this respect they will consider the amount of pecuniary interest involved.

It is no objection to the validity of the proceedings of the county court, in laying out a cross road, or lane, that it is laid only to land not occupied as a dwelling place. The question, whether, or not, there is convenient access to the land, without laying out the road, is one of fact, to be determined by the county court.

PETITION for writ of *certiorari.* The selectmen of Leicester, on the twenty fifth day of January, 1848, caused a survey of a cross road, or lane, as a pent road, across the land of the petitioner and of John Bullock, to be made and recorded, in which they stated, that, having given notice to the land owners, and having viewed the premises, they judged, "that the public good and the wants and necessities of individuals" required such a road ; and they set forth the *termini,* courses and distances of the centre line, the road to be one and an half rods wide, and directed the erection of gates, or bars, upon the road, and ordered, that they should all be kept in repair by John Bullock; and they assessed the damages of the petitioner at five dollars, taking into consideration the fact, stated by them, that the land of the petitioner, across which the road was laid, was a lot remaining entire, as originally divided among the proprietors of Leicester, in which there was an allowance for highways, of which none had been previously taken. The petitioner then preferred his petition to Addison county court, at their June Term, 1848, praying for the appointment of commissioners to inquire into the necessity and convenience of the road so laid out, and the manner in which it was laid out, and the damages sustained by the petitioner. Commissioners were accordingly appointed, and reported, that the road, as laid by the selectmen, ought to be established, subject to the conditions in respect to bars and gates imposed by them ; that they found, that the selectmen, on the twenty fourth day of January, 1848, gave personal notice to the petitioner and to John

Bullock, whose land was crossed by the proposed line of road, that they would meet on the twenty fifth day of January, 1848, at a place specified, for the purpose of examining the road and assessing the damages, and that the petitioner did not appear, and that the selectmen then proceeded to make their examination, and assessed the petitioner's damages at five dollars,—Bullock waiving all claim for damages. The commissioners also reported, that the petitioner's land, across which the road was laid, was an entire lot, as originally divided among the proprietors of the town, and that there were ten acres of allowance land attached to the lot for roads; that John Bullock owned land upon the north and south sides of the petitioner's land, adjoining a public highway upon the west, but that between that highway and the easterly part of the lot north of the petitioner's land, there was a high ridge of land, beyond which there was a valley of improved land belonging to the petitioner and to Bullock, and also land of one Stanley, the products of all which must either be transported across the high ridge above mentioned, or over the road laid by the selectmen; and the commissioners appraised the petitioner's damages at five dollars and reported that Bullock relinquished all claim for damages. The petitioner filed exceptions to this report; but the county court, at their December Term, 1848, accepted the report, and ordered, that the road be established, and awarded execution against the petitioner for cost.

*Barber, Bushnell* and *J. Prout,* for petitioner, insisted, that it did not appear, that the " convenience of the inhabitants and the public good," required the laying out of the road, as required by statute ;— that it appeared, that the road was not laid wholly at the expense of the town ;—that it appeared, that the road was laid wholly for the convenience of one individual,—Bullock ;—that it did not appear, that the selectmen acted on an application in writing of three freeholders ;—that the road was not laid absolutely, but only upon condition, that Bullock should erect and keep in repair the gates, or bars, across the road ;—that there was error in relation to the damages, in charging the making and keeping in repair of the gates upon Bullock; and that there was error in the county court, in not specifying a time for the payment of damages by the town and awarding execution, in case of failure to pay; and they relied upon

Rev. St. ch. 20, §§ 1–6, 10, 12, 26; *Commonwealth* v. *Sawin et al.*, 2 Pick. 547.

*E. N. Briggs* for petitionees.

The opinion of the court was delivered by

REDFIELD, J. It is perhaps hardly necessary to go very fully into an examination of all the questions raised in the discussion of this case at the bar. But such cases are somewhat unfrequent in our practice, and confined within far narrower limits, than in the English practice. One cannot fail to perceive, that in the English courts of chancery, King's Bench and common pleas the remedy by writ of *certiorari* is very extensive. Its more general use is, to bring up a judicial proceeding from an inferior court, at some stage anterior to the judgment. It seems, that writ will not lie in any case, where the proceedings are according to the course of the common law, and where judgment has been already rendered,—the proper remedy then being by writ of error. *King* v. *Penegoes*, 2 D. & R. 209; *S. C.*, 5 Petersd. Abr. 168, citing 1 Salk. 150, 6 Mod. 61, 2 Ld. Raym. 971, 13 East 411, 412, n. *a.* These cases, upon examination, will be found to involve other points, and that mainly; but the principal case decides the very point, for which we have cited it.

But in the English practice this writ is used to bring up indictments, and proceedings of a summary character, in almost all their stages of advancement, and upon almost all grounds, as the reported cases show,—which will be found thoroughly digested in 5 Petersdorff's Abr., and 1 Bacon's Abr., Tit. *Certiorari.* The remedy has not been used for any such purposes in this state. Many of the objects, which in England have been obtained by *certiorari*, are here obtained by writ of *mandamus* from this court to the inferior tribunal, requiring them to proceed to give such a judgment, as the law requires, or to do certain other acts. The chief difference in the remedy by *certiorari* and *mandamus* is, that by the former the record is brought into the superior court, and that court then proceeds with the case, while by the latter the case is to be proceeded with according to the order of the superior court, but in the inferior court.

But in this state the jurisdiction in all matters, both civil and

criminal, being portioned out to separate courts, and each jurisdiction being exclusive, it would tend to bring every thing into utter confusion, to give the party an election, to remove his case, at will, into the superior court. And when a writ of error will lie, as it always will after judgment, when the proceeding is in the ordinary course of the common law, the remedy by *certiorari* is needless.

But where the proceeding is in the nature of an order of sessions, or decree of commissioners, although done in a court of record, a writ of error will not lie;—as has been often held in regard to orders of the county court laying out highways. The only remedy in such cases is by *certiorari*, or *mandamus*. But it must not be supposed, that this court intend to sit to revise every determination of the county court in regard to this very anomalous and onerous portion of their jurisdiction. We know very well, that neither our leisure, or our education, have qualified us to exercise uncommon wisdom in regard to the subject of highways. If we could go upon the ground and spend the requisite time, we could do something towards coming to a correct determination, perhaps. But when the statutes of the state require us to act as a supervising board of road commissioners, we must do what we can, to discharge the very cumbersome duty. But we certainly have not, as yet, acquired any such facility in such matters, or any such assurance of the infallibility of our judgments in regard to them, as would warrant our frequent interference.

This remedy by *certiorari*, in road cases, is intended mainly; we believe, to answer the objects and ends, which are intended to be reached by a writ of error, in those cases where that writ lies, that is, to revise the proceedings of the inferior tribunal in matters of law. Those matters; which rest in discretion in the court below, are always; mainly, matters of fact, and can be far better tried in the county court, than here. Hence the question, how far the public good, or the necessity of individuals, may require a road, is matter of fact; to be judged of exclusively by the commissioners and the county court. And how many, or how few, persons may live upon the road; or whether the road is laid to accommodate the land of one person only, are all questions of fact, upon which the discretion of the county court is to be exercised, and which cannot be revised here, unless by placing the facts upon the proceedings of the county

court, which show, that they could not, in point of law, render such a judgment, as they did.

And it must not be supposed, that all the facts, necessary to give the jurisdiction, or to legalize the proceedings, must be spread out, or else this court will quash them. It may be true, that some cases may be found in the state of New York, or elsewhere, in which some such reasoning may have fallen from the court. But surely no such rule can be fairly vindicated. We should presume as much, perhaps more, in favor of the regularity of these proceedings, as in actions at common law.

How, then, can it be said, that this court are here imperiously called upon to quash these proceedings?

It must be always borne in mind, that, in regard to all these prerogative writs, whereby this court assumes a supervisory jurisdiction over subordinate tribunals, we have, and in many cases exercise, a discretion in withholding the remedy, even when it is obvious, that some formal error has intervened. Among the constant and important considerations, which should guide the exercise of that discretion, is one consideration, which applies with great force to the present case, the very small amount of pecuniary interest involved. And when a civil case is utterly insignificant in point of pecuniary amount, it becomes almost impossible to gird ourselves up to a point of painful solemnity, in order to discuss the vital importance of the *principles involved.*

We know, indeed, that for one man to ask for a public highway across another man's land, for the mere purpose of accommodating and thereby increasing the value of his own land, is, past all contradiction, a most absurd request. And we should be unwilling to believe, that any board of selectmen, or commissioners, would lay a road under such circumstances. But it is impossible for us to say, in any given case, that a road is laid for any such purpose, unless it so appear by the report of the commissioners, or by the finding of the county court. This court can no more revise the finding of those tribunals, than of a jury, in a given case.

And when it does appear by the record, as in the present case, that the road is laid to accommodate the land of different persons, we could make no inference, that the public good did not require it,—but the contrary. A highway may be as important to accom-

modate farms, unoccupied as dwelling places, as if they were so oc-
cupied.   The owners must in some fair way have access to them
for themselves and their cattle, summer and winter.   And the rea-
son no dwelling houses are built, or occupied, on many lands, is the
want of highways.   It surely requires no labored argument, to ex-
pose the absurdity of requiring a man to cross a mountain with his
produce, or bargain with a crusty neighbor, as he best can, or com-
mit a trespass, every time he enters upon his own land, by crossing
that of others,—which it seems to me must be the result, if one man
may not ask a highway, merely to accommodate *his land*.   How can
he build a house, if he should choose to, unless he have some con-
venient road to his land ?   And whether he have, or not, is matter
of fact, to be determined by the county court ; and from their
granting the land owner, in this case, this road, this court *must*
presume he had not a suitable road before.   If the present owner do
not desire to build a house upon the land accommodated by this
road, he may wish to sell to one who will, or he may change his
mind.   We cannot see any limit, of the kind attempted to be estab-
lished, to the discretion of the county court, in laying highways.

This seems to dispose of the main question in this case.   The
other points urged are merely *technical*, and not sufficient grounds
for allowing the writ, in our discretion, even if they were well
founded in law,—which we think, indeed, they are not.

The petition is dismissed, with costs to the petitionees.