## PETITION OF LANDAFF FOR WRIT OF CERTIORARI.

The party aggrieved by any first judgment, decree, or order of the Court of Common Pleas, may, under the statute of New-Hampshire, tender his bill of exceptions, and have it made part of the record, though the proceeding be not according to the course of the common law.

When a bill of exceptions is allowed in a petition for a highway, the remedy on the bill of exceptions is by writ of *certiorari*, and in such case the Supreme Court will revise the decision of the Common Pleas in matters of law, though made within their jurisdiction.

The writ of *certiorari* is not awarded as matter of right, but will be refused where the court can see that substantial justice has been done, though the record shows that errors have been committed in matters of form.

If road commissioners receive incompetent and material evidence bearing on the general merits of the cause, on a bill of exceptions a writ of *certiorari* will be awarded to quash the judgment of the Common Pleas, accepting the report and establishing the highway.

Where such evidence consisted of the oral testimony of a witness, heard by the commissioner, the Supreme Court cannot receive evidence that the commissioners did not in fact deem the evidence at all material, nor consider it in making up their opinion.

Where the road established by the judgment of the Common Pleas lies in two towns, it is not necessary that both towns should join in the petition for a *certiorari* to quash the judgment.

The declaration of an inhabitant is not competent evidence against the town in which he resides.

PETITION for writ of *certiorari*, to quash the record and proceedings in the Court of Common Pleas on the petition of Clark Hayward for a highway in the towns of Bath and Landaff.

The petition had been referred to the road commissioners for Grafton county, who, at the September term, 1854, made their report, laying out the highway in both towns. The towns resisted the motion of the petitioners for the acceptance of the report, and filed several exceptions to the report. The court overruled the exceptions, and rendered judgment, accepting the report and establishing the road. The towns filed their bill of exceptions, which was signed and allowed at the same term.

On the bill of exceptions allowed by the Common Pleas, it appears that the towns filed five exceptions to the acceptance of the report :

1. That at the hearing before the road commissioners, Riley Wells, a witness introduced by the petitioners, was permitted, against the defendants' objection, to testify in substance that he had conversed with a number of the inhabitants of East Landaff, (stating the number,) and that they had all told him they were in favor of the highway petitioned for.

2. Also, that at said hearing before the road commissioners the petitioners' counsel offered as evidence a former petition to the selectman of Bath, in favor of the laying out of said highway, on which was an endorsement, signed by the selectmen of Bath, or a majority of them, to the effect that, in their opinion, the public good required the laying out of said road. This petition, with the said endorsement, was read by the commissioners, though objected to by the defendants, and before the question of its admissibility was ruled upon by the commissioners, was withdrawn by the petitioners, all which proceeding was for the sole purpose of getting matter, known by the petitioners' counsel to be inadmissible, before the board in such way that it should have effect as evidence, yet the defendants be deprived of any exception thereto. The Court of Common Pleas overruled this exception, and rejected the proof in support of it.

The third, fourth and fifth exceptions to the acceptance of the report charged that the commissioners, or some of them, had formed and expressed opinions on the merits of the cause before the hearing, and had such bias and partiality as made them unsuitable persons to consider the cause; and also charged that the petitioners for the road, and the commissioners, or some of them, had been guilty, during and after the hearing, of improper conduct.

The Court of Common Pleas heard evidence in support of the charges in the third, fourth and fifth exceptions, and against them, and decided that they were not well founded in fact.

The original petitioners offered to prove, on the hearing in the Supreme Court, that the testimony of Riley Wells was not deemed at all material by the commissioners, nor considered by them in making up their opinion.

*Hibbard & Bingham,* for Landaff.

I. *Certiorari* is the proper remedy for errors at law in the court below, in all cases where the course of proceeding is by virtue of the statute, and not under the common law. *Commonwealth* v. *Ellis,* 11 Mass. 466 ; *Same* v. *Coombs,* 2 Mass. 489 ; *Drowne* v. *Stimpson,* 2 Mass. 441 ; *Edgar* v. *Dodge,* 4 Mass. 670 ; *Huse* v. *Grimes,* 2 N. H. 210.

II. Although the issuing of this writ is in the discretion of the court, and they may decline to issue it for mere technical and formal errors where substantial justice has been done, yet it must be a sound discretion, exercised in conformity to law, and it becomes the duty of this court to issue the writ whenever it is asked for by the party really suffering injustice at the hands of the court below. *Cushing* v. *Gay,* 23 Maine 9 ; *Ex parte Weston & a.,* 11 Mass. 417.

If it appears that any injustice has been done which is not merely formal and technical, the writ must be granted. It is necessarily to be inferred that injustice has been done by the admission and consideration of illegal and incompetent testimony, like that received in this case. But it seems certain that substantial injustice was done, when it is considered that the town moved for a transfer of these questions, which motion was denied in the Common Pleas, and a bill of exceptions filed instead. Had there been a transfer, if the testimony of Riley Wells and that contained in the old petition was incompetent, as we suppose without doubt it was, the exceptions would have prevailed in the Supreme Judicial Court, the report would have been set aside or recommitted, the town would have had a new hearing, and perhaps a report in their favor.

III. The record presents the following errors :

1. The court below overruled the objection to the testimony of Riley Wells, made at the time such testimony was given before the road commissioners, and afterwards persisted in by the town of Landaff in every stage of the proceeding.

2. The court below overruled the objection made to the conduct of the petitioners for the road before the road commissioners, in

introducing and permitting the road commissioners to read the petition to the selectmen, and the return on the same against the defendants' objection, and then withdrawing it before the question of its admissibility was ruled upon; all this being done by said petitioners for the purpose and with the express design of getting testimony known to them to be incompetent before the commissioners in such a way as to deprive the defendants of any exception thereto.

3. The court below overruled all the objections made by the defendants, grounded upon facts indicating gross partiality and bias on the part of the chairman of the board of road commissioners in favor of the petitioners.

IV. As to the testimony of Riley Wells, we suppose no one will question its illegality. It is a mere statement of what the witness had been told as to the opinions of the people living in East Landaff. It is hearsay evidence of matters of opinion; it is hearsay evidence of facts in themselves incompetent to be considered.

As to the petition to the Bath selectmen, and the return on it, it is clearly illegal evidence. It was an old petition, never acted upon, and on which the selectmen had made a return that in their opinion the public good required the laying out of the road in controversy. Could any testimony be more clearly incompetent, or more mischievous in its probable effect upon the board?

V. We take the position that road commissioners in hearing testimony are bound by the rules of law, and if they hear illegal evidence in favor of one party, the other party objecting to it must vitiate their report, if the same be rendered in favor of the party introducing the illegal testimony. If this be true, there was manifest and substantial error in hearing the testimony of Riley Wells. *Watts* v. *Derry*, 2 Foster 498, affirmed in *Kennett's Petition*, 4 Foster 139; also, in *Goodwin* v. *Milton*, 5 Foster 458–473, made in point.

As to the petition to the Bath selectmen, it being offered and odjected to, and then, after being read by the commissioners, withdrawn, and all this for the sole purpose of improperly influencing the

commissioners by exhibiting to them evidence which the petition-
ers knew to be illegal, under the circumstances we think it ought
to be considered the same as if the evidence had actually gone
in, subject to the defendants' objection. To do this would be
simply to give the defendants the advantage which they would
have had if the evidence had gone in in the ordinary way.

Again, it was a trick, a fraud, and it would be inflicting a
righteous punishment upon the petitioners to quash the proceed-
ings and annul the report thus unfairly obtained in their favor.
It might teach them that honesty is the best policy. *Knight* v.
*Freeport*, 13 Mass. 218 ; *McIlvaine* v. *Wilkins*, 12 N. H. 474 ;
*Wilton* v. *Southwick*, 17 Maine 303.

*Quincy, Felton,* and *Goodall & Carpenter*, for the original
petitioners.

As to the first exception we say, a knowledge of the road
commissioners, however obtained, of the views of individuals,
few or many, in regard to the expediency of laying roads, is
no objection to their acting, and is no objection to their report.
They are public officers, elected by the people, to act for the
public in relation to public interests, so far as regards such ex-
pediency. Their duties are different (and in the performance of
them they should be governed by different principles) in respect
to the assessment of land damages, in which private interests
are directly involved. But private individuals are not as such
parties here, and their interests are not in question.

Road commissioners are different from jurors in almost every
respect. They do not discharge their duties in the presence of
the court, and are not particularly instructed by the court ; are
not in the custody of an officer, and have no superior tribunal
present to rule upon the competency of evidence. Commission-
ers are to " make examinations, and to hear all parties interested
in the same manner as selectmen are required to do, and have
like powers." Compiled Statutes, chap. 54, sec. 3. They act
upon the same subject matter as selectmen. Selectmen are
always interested in such subject matter ; commissioners must

not be; and this is the only difference made by statute in their qualifications, or, more properly, *dis*qualifications. Selectmen know or may know the views and wishes of individuals in respect to the roads they are asked to lay. If selectmen refuse to lay a road, their determination may be appealed from; if they lay one, there is no appeal so far as respects the laying. But land owners may appeal from their award of damages. Comp. Stat., chap. 53, sec. 9.

A road commissioner cannot be challenged, for the reason that every man in the county has communicated his views and wishes to him in relation to the laying of a road, and his only disqualification is that of interest.

The evidence of Riley Wells was immaterial. *Clement* v. *Brooks*, 13 N. H. 95, 96; *Harriman* v. *Wilkins*, 20 Maine 97. These authorities, especially the last, are applicable to both exceptions. See, also, *Blake* v. *Gilbert*, 15 N. H. 533.

The road commissioners ought to inquire, and know, whether many or few are in favor of the road, and want it. Such knowledge constitutes a legitimate foundation for their judgment.

As to the second objection, we say : The evidence offered was withdrawn, and it is not to be presumed that the commissioners regarded it. *Goodwin* v. *Milton*, 5 Foster 472, 473; *Blake* v. *Gilbert*, 15 N. H. 533. Even if they did, it related only to the part of the road lying in Bath, and Landaff was not affected by it. Bath is not complaining. *Currier* v. *Grafton and Enfield*, 8 Foster 74; *State* v. *Richmond*, 6 Foster 245; *Whiting* v. *Cochran*, 9 Mass. 532; *Shirley* v. *Lunenburg*, 11 Mass. 379. If the interests of Landaff and Bath are so united and identical that Landaff can avail itself of the second exception, Bath should have been joined with Landaff in this petition. *Andrews* v. *Bosworth*, 3 Mass. 223; *Guy* v. *Richardson*, 18 Pick. 417; *Shirley* v. *Lunenburg*, 11 Mass. 379. A *certiorari* is, in relation to proceedings not according to the course of common law, what a writ of error is in relation to proceedings according to that course. See, also, *Rutland* v. *Worcester*, 20 Pick. 84, 85.

If any impression was made on the minds of the commission-

ers by the evidence, it was made once for all, and could not afterwards be removed ; and a commissioner cannot be challenged or set aside on account of such impressions. If the report had been recommitted, it might of necessity have been recommitted to the same board. The same board might have been reëlected for many years, even without any limitation but the good pleas ure of the electors. This evidence, too, was immaterial.

But generally, we say, all the evidence excepted to was competent, as admissions of taxable inhabitants of the towns, and, further, that the evidence which is the subject of the second exception was competent as an admission of the agents of Bath. 1 Greenl. Ev., sec. 175, and note 6 ; also, secs. 330, 331 ; *State* v. *Walpole*, 15 N. H. 26. The inhabitants of towns are the corporations. Comp. Stat., chap. 32, sec. 1.

The *certiorari* will not be granted where substantial justice has been done. On hearing the application for the writ, the question is discussed on its merits, and the petition is granted or denied, according to the substantial justice of the case. From all the facts appearing in this case, the court would be justified in holding that substantial justice has been done. The Court of Common Pleas have power to reject or accept the report. They may reject it if, on the whole, they believe the road ought not to be laid.

The commissioners were the judges of the competency of the evidence received before them, and their rulings on that subject cannot be inquired into by this court. They are a tribunal of limited jurisdiction, created by the statute, and their powers and duties are prescribed and defined by the statute ; and by the statute they are bound to hear all parties interested, and any evidence they may offer, in the same way and manner as selectmen do in laying out roads. Should the court hold that in hearing parties interested they are to be governed by the strict principles of the common law, they annul and abrogate these provisions of the statute.

The commissioners are elected as independent men ; the law entrusts them to make their examinations and conduct their

hearings according to their own discretion. No sheriff guards them; they are not supposed to understand the technical rules of law, nor to act by them.

It is like a hearing before magistrates on an application to take the poor debtor's oath, where it has been held that the reception of evidence incompetent by the rules of law does not invalidate the discharge. *Blake* v. *Gilbert*, 15 N. H. 533. In general the court cannot apply to petitions relating to highways the principles which apply to adversary suits at common law. *Petition of Strafford*, 14 N. H. 32.

The effect of an application of the principles of common law to commissioners, in the reception of evidence and in the execution of their powers, would be to disregard the clear intention of the legislature in creating that body, and in prescribing their powers and duties ; and would be productive of serious inconveniences, and in contested cases defeat the object for which that tribunal was created. The cases cited by defendants' counsel, recently decided by the former Superior Court, and relied on as settling this question, do not in terms embrace it; and we apprehend that the court will not push the application of the principle, real or supposed, on which those cases rely, so far as to embrace the one now under consideration.

The court cannot presume that the evidence excepted to had any influence on the minds of the commissioners.

The evidence of Riley Wells was immaterial. What the inhabitants of East Landaff said in favor of the road had no bearing on the question whether the public good required it to be laid out; and a verdict will not be set aside because incompetent evidence has been received to prove an immaterial fact. *Jewett* v. *Stevens*, 6 N. H. 80 ; 6 N. H. 330 ; *Clement* v. *Brooks*, 14 N. H. 92; *Wakefield* v. *Alton*, 3 N. H. 378.

PERLEY, C. J. In *Watts* v. *Day*, 2 Foster 498, it was decided that one of the petitioners for a highway, being interested in the result of the cause, was not a competent witness on the hearing before commissioners, and the report was set aside on

that ground. It is said in that case that the court are bound to consider the question on the principles of the common law. The same case was recognized in *Kennett's Petition*, 4 Foster 139 ; and in *Goodwin* v. *Milton*, 5 Foster 458, it was held that a proposition to make the road on certain terms was incompetent evidence, and that the exception to the report would have prevailed, if such evidence had been received and considered by the commissioners.

These cases must be taken to have settled the point that in hearings before road commissioners the same rules of evidence prevail as in trials at common law ; and that, if incompetent evidence is given on the hearing by the prevailing party, the report should be set aside in the Common Pleas, provided exception to the evidence were seasonably taken before the commissioners. If the question could be regarded as an open one, the forcible argument of the counsel for the original petitioners would deserve very deliberate consideration.

Was incompetent evidence received in the present case ? Riley Wells was admitted, against the defendants' objection, to testify " that he had conversed with a number of the inhabitants of East Landaff, stating the number, and that they had all told him they were in favor of the highway petitioned for."

We take it for granted, though the fact does not distinctly appear on the bill of exceptions, that these inhabitants of East Landaff were inhabitants and tax-payers in Landaff, one of the towns through which the road was laid out. It is contended that their declarations are competent evidence against the town in which they reside. But in this State towns are corporations, and in suits by or against towns the inhabitants are not individually parties ; the corporation is the party, and the declaration or admission of an inhabitant is not competent evidence against the town. The inhabitants are competent witnesses for or against the towns to which they belong.

In England the inhabitants of parishes are regarded in law as parties individually to suits respecting the settlement of paupers, and perhaps other suits ; and, being parties to the suit, they

cannot be compelled to testify against the parish to which they belong. On this ground the declaration of a rated inhabitant is allowed to be given against his parish, like the declaration of any other party to a suit. In *The King* v. *The Inhabitants of Hardwicke*, 11 East 577, Lord *Ellenborough* thus states the rule and the reason of it: "The question then, is, whether the declaration of a parishioner respecting the circumstances of a settlement, of which he could not be compelled to give evidence as a party to the appeal depending, be admissible in evidence. I consider all appeals against order of removal, though technically carried on in the names of the church wardens and overseers of the respective parishes, yet, in substance and effect, to be the suits of the parishioners themselves. The parishioners, therefore, being a party, could not be called as witnesses;" and *Bailey*, J., in the same case, says, "Every rated inhabitant may refuse to give evidence in such suit. I also think it follows from thence that the declaration of every such rated inhabitant is evidence."

But in this State the inhabitants of towns are not parties to petitions for highways; and, as in other causes to which towns are parties, they may be called as witnesses for or against the towns in which they reside. In Maine it would seem that towns are parties to suits in their corporate capacity, and the inhabitants are competent witnesses as with us ; and in that State it is held that the inhabitant, being a competent witness, his declaration is not admissible as evidence against the town. *Inhabitants of Corinna* v. *Inhabitants of Exeter*, 13 Maine 321. And so we think the rule has always been understood in this State.

Nor was the fact competent which the testimony of Wells was introduced to prove. Highways are laid out on reasons of public convenience and necessity. The wishes and opinions of particular individuals cannot be regarded as evidence that the public good requires the road to be made. The evidence cannot be regarded as immaterial, for the wishes and desires of a number of people residing in the county would be likely to have an influence on the minds of the commissioners, and the evidence had a tendency to show an admission on the part of one of the towns that the road ought to be laid out.

The testimony of Riley Wells was incompetent. We feel bound to consider it as material, and it bore directly on the merits and main question in the cause.

The writ of *certiorari* is not like a writ of error — a matter of right. The court have a discretion to grant or refuse a *certiorari;* and the merits of the whole case are usually heard, as they have been in this instance, on the application for the writ. *Gleason* v. *Sloper*, 24 Pick. 184; *Whately* v. *Commissioners of Franklin Co.*, 1 Met. 338; *Stone* v. *Boston*, 2 Met. 228; *Huse* v. *Thompson*, 2 N. H. 210; *Tucker's Petition*, 7 Foster 405.

In England the writ of *certiorari* is used to remove a cause from an inferior to the superior tribunal before judgment, when both courts have jurisdiction, in order that the further proceedings may be had in the court above. But a *certiorari* is awarded after judgment, where the court above have no jurisdiction of the cause, and can render no judgment in it, " in order that the judges may inspect the record and see whether they keep within the limits of their jurisdiction." 1 Tidd's Practice 333, 334.

I do not understand that in England, on a *certiorari* after judgment in a civil cause, the court above, if the inferior tribunal has proceeded regularly within its jurisdiction, undertakes to revise its decision, either in matters of law or matters of fact; and in New-York, on a common law *certiorari*, they hold that the court will not examine the proceedings returned, further than to ascertain whether the inferior tribunal has kept within its jurisdictional limits. *Birdsall* v. *Phillips*, 17 Wendell 469; *The Matter of Mount Morris Square*, 2 Hill 14. From what is said in the early case of *State* v. *Thompson*, 2 N. H. 237, it would seem to have been understood that the rule was the same in this State. That was an application for a *certiorari* to quash proceedings in the common pleas on a petition to abate a tax. *Richardson*, C. J., says : " The power to issue *certiorari* is given to this court to keep inferior courts within their jurisdiction. If this objection to the *certiorari's* going is well founded in fact, it must, without question, prevail." In that case there does not appear to have been any bill of exceptions filed and allowed in the

Common Pleas, and the court, we think, cannot be understood to have intended to state more than the general rule applicable to cases where the inferior tribunal proceeds by summary methods, not according to the course of the common law, and no special provision is made, intended to secure the right of revision in a higher court. But this application is founded on a bill of exceptions, filed and allowed under the statute ; and though there have been several such cases in this State, we are not aware of any in which the court have been called on to lay down any rule determining how far this court will undertake to revise the decision of the Common Pleas in petitions for laying out highways.

This court have by the statute exclusive authority to issue writs of error and *certiorari*, and the general superintendence of all courts of inferior jurisdiction, for the prevention and correction of errors and abuses. Compiled Statutes 434, secs. 6 and 7. The provision for bills of exceptions in the Common Pleas is as follows : " Any person aggrieved by any opinion, direction or judgment of said Court of Common Pleas may allege exceptions thereto at the same term, which shall be reduced to writing before the adjournment of the court; and, being conformable to the truth of the case, shall be signed by the presiding justice, and be a part of the record in such case." Comp. Statutes 437, sec. 25.

It is extremely plain, on the language of the statute, that the right to file exceptions is not confined to cases where the proceedings are according to the course of the common law, and where the bill of exceptions, being made part of the record, lays the foundation for a writ of error ; the provision, in terms too plain for doubt, extends to all orders and decisions of the court upon a matter of law in any action or proceeding, and of course to the order for acceptance of a report by road commissioners, and to the order or judgment establishing a highway laid out according to the report ; and this whether the court has proceeded within its jurisdiction or has exceeded it.

It must, therefore, be held that on a petition for laying out a highway, the statute gives the party aggrieved the right to file

his bill of exceptions to any order or decision of the court of common pleas, and to have the bill signed and made part of the record. To what end, if the decision of that court is to be final, and not capable of revision and correction in another tribunal?

In most cases where these questions have been considered in England, the inferior tribunal was one of a special and limited jurisdiction, proceeding by summary methods; but the Common Pleas in this State is a court of general jurisdiction and a superior court; having a regular procedure and a settled course of practice; and we think that the intention of the statute in providing for a bill of exceptions was to furnish the means of reviewing and correcting the decisions of the court in matters of law generally, whether the proceeding in the particular case was according to the course of the common law, and subject to correction by writ of error, or in a different method, which required the record to be carried up by *certiorari ;* and such is the view which is taken of the question in Vermont. *Paine* v. *Leicester,* 22 Vt. 48.

We come, then, to the conclusion that under our statute this court, upon a *certiorari* founded on a bill of exceptions allowed in the common pleas, is not limited to the -enquiry whether that court has kept within the limits of its jurisdiction, but have power to correct errors in matters of law arising on questions within the jurisdiction of that court, and that is this case.

But though the party who has his exceptions allowed in the Common Pleas is entitled to his remedy upon them, he must take it according to the nature of the proceeding in which the questions arose. If that be according to the course of the common law, he sues out his writ of error as matter of right; but if the proceedings are of a nature to require a *certiorari,* he must make his application to the court who have a discretion to grant or deny the writ; and that brings us to the main question and the principal difficulty in this case; to wit, by what rule is this discretion of the court to be guided and exercised.

The cases seem to be agreed in the principle that, if the errors and defects complained of are merely formal and technical, and

the court can see that no substantial injustice has been done, the writ will be refused. *Freetown* v. *Commis'rs of Bristol*, 9 Pick. 46 ; *Cobb* v. *Lucas*, 15 Pick. 4 ; *Rutland* v. *Commissioners of Worcester*, 20 Pick. 71 ; *Gleason* v. *Sloper*, 24 Pick. 184 ; *Whately* v. *Commissioners of Franklin*, 1 Met. 338 ; *Stone* v. *Boston*, 2 Met. 228 ; *Barnard* v. *Fitch*, 7 Met. 605 ; *Paine* v. *Leicester*, 22 Vt. 48 ; *Cushing* v. *Gay*, 23 Maine 12.

The court above cannot revise the decision of the court below on the general merits of the cause, nor the finding of any question of fact submitted, on evidence to the court below. But evidence will be received on the petition for *certiorari*, not to contradict the record, but to show that the errors complained of are formal and technical, and that substantial justice has been done. *Freetown* v. *Commissioners of Bristol*, 9 Pick. 46 ; *Cobb* v. *Lucas*, 15 Pick. 4 ; *Rutland* v. *Commissioners of Worcester*, 20 Pick. 91 ; *Gleason* v. *Sloper*, 24 Pick. 184.

In *Cobb* v. *Lucas*, which was a prosecution to recover a military fine, the court above held that the orderly book was the best evidence that the company was mustered and the petitioner was absent. The magistrate admitted other and incompetent evidence of those facts. But the orderly book was produced in the court above, and the two facts appeared by the record. The court refused a *certiorari*. Here the record established the facts to which the incompetent evidence was admitted.

So in *Gleason* v. *Sloper*, which was also a prosecution to recover a military fine, the magistrate admitted a letter, to prove that the company was without a commanding officer. It was agreed that the evidence was incompetent ; but the fact that the company was without a commander was shown to the court above by the competent evidence, and the writ of *certiorari* was denied.

In hearings before commissioners, where the law requires a particular form of notice, if actual notice were given, which afforded the party applying for the *certiorari* full opportunity to appear and be heard, a *certiorari* will not be granted, though the legal notice were not given. *Freetown* v. *Commissioners of Bristol*, 9 Pick. 46 ; *Rutland* v. *Commissioners of Worcester*, 20 Pick. 71 ; *Stone* v. *Boston*, 2 Met. 228.

But where incompetent evidence has been received, or competent evidence rejected, bearing on the general merits of the cause, the cases go to show that the error must be regarded as substantial, and injurious to the party against whom it has been committed. *Ex parte Hayward*, 10 Pick. 359; *Little* v. *Cochrane*, 24 Maine 511; *Cousins* v. *Cowing*, 23 Pick. 215.

We have seen no case in which it has been decided that if incompetent and immaterial evidence to a controverted fact, bearing on the general merits of the cause, was received by the court below, the court above could regard the error as formal and not substantial.

We think the following general principle may be deduced from the authorities:

In jurisdictions where the court on *certiorari* revises the decisions of the court below in matters of law, the writ will not be granted where the error complained of is matter of form, and the court can see that no substantial injustice has been done.

Where incompetent evidence has been received to some incidental fact, not bearing on the general merits of the cause, but it appears on the hearing, by competent and conclusive evidence, that the incidental fact was according to the finding of the court below, the error in admitting the incompetent evidence is regarded as matter of form, the court being able to see that no injustice has been done, and the *certiorari* will be refused; as in case of the production of the orderly book, which showed to the court above by the record that the particular fact was as the court below had found it on the incompetent evidence. So in the case of substantial but informal notice; the error is a technical irregularity, which the court can see had nothing to do with the decision of the merits of the cause.

But where illegal and material evidence has been received, or legal evidence has been rejected, bearing on the main point in controversy and the general merits of the cause, the error must be regarded as substantial, and the writ of *certiorari* will be awarded unless the objection has been waived by unreasonable delay in applying for it, or in some other way.

This court have no jurisdiction to revise the decision of the commissioners on the general merits of the case, as it depended on the weight of the evidence received and considered by them. We should be going beyond our province if we undertook to inquire whether their decision ought to have been the same, or would in fact have been the same, though the incompetent evidence had not been received. The evidence was illegal; it was not immaterial; it bore directly on the main question in controversy and the general merits of the cause; it was not matter of form, it did not relate to any incidental fact, such as notice, and the court must regard the error in admitting it as injurious to the parties against whom it was received.

It is not necessary for the decision of the case to consider the other exceptions.

It is objected that the *certiorari* cannot be awarded, because the road was laid out on the same petition and established by the same joint judgment in the towns of Bath and Landaff, and Bath does not join in the petition. Where the proceeding is according to the course of the common law, the judgment against two defendants or two plaintiffs in the same cause is joint, and each is bound to the whole judgment. But two towns, through which a road is laid out on the same petition, are not joint defendants in that sense. The same judgment establishes the road in both towns, but the judgment against each town is in effect several. One town has nothing to do with the performance of the judgment by the other. Each town is severally liable for the performance of the judgment within its own limits, and bound to nothing beyond. The towns are no more connected with each than the different land owners. The towns and all the land owners are bound by the same decree or judgment which accepts the report and establishes the highway. But the interest of each town and each land owner is separate and several, and each may separately apply for remedy to the court above.

The incompetent evidence in this case was the oral testimony of a witness examined before the commissioners. Having been received by the commissioners and heard by them as evidence,

no testimony can be received to show that they did not in fact consider it, and that their decision could have been the same without it. In trials by the jury this is the well established doctrine, and we see no ground to apply a different rule in the case of hearings before commissioners. They are just as little able as jurors to say what part of the evidence which they have heard has led them to their conclusion. *Page* v. *Wheeler*, 5 N. H. 91 ; *Whitney* v. *Whitman*, 5 Mason 405.

In this case the objection to the proceedings before the commissioners and in the Common Pleas appear on a bill of exceptions filed and allowed under the statute, and our decision has gone partly on that ground ; but we do not undertake to say that the decision would have been different if there had been no bill of exceptions filed in the Common Pleas, or if a like case had come up from a tribunal in which the law does not provide for a bill of exceptions.

A writ of *certiorari* must be awarded to quash, not the whole proceeding in the Common Pleas, but the judgment accepting the report of the commissioners and establishing the highway.